IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

BRICKSTREET MUTUAL INSURANCE COMPANY,

        Plaintiff,

v.                    CIVIL ACTION NO. 2:15-cv-06172

ZURICH AMERICAN INSURANCE COMPANY,

        Defendant.

**MEMORANDUM OPINION AND ORDER**
*(Defendant's Motions to Dismiss)*

Pending before the court is the defendant's Motion to Dismiss [Docket 7]. For the reasons set forth below, the Motion to Dismiss is **DENIED**.

**I.**   **Introduction**

This case arises out of injuries suffered by Jonathan Posadas Gutierrez[1] while working at the Tunnel Ridge mine outside of Wheeling, West Virginia. As a result of his injuries, Mr. Gutierrez commenced litigation against various entities in the Circuit Court of Ohio County, West Virginia, including his employer, the Employers' Innovative Network, LLC ("EIN"). The underlying worker's compensation claim was ultimately extinguished by a confidential settlement agreement, but disputes remain over which insurance company or companies have responsibility for paying the claim.

---

[1] Mr. Gutierrez was previously known as Jany Rivera Cordova.

In accordance with a professional employer organization (PEO) agreement between EIN and Taggart Site Services Group, LLC ("Taggart"), EIN purchased workers' compensation insurance from BrickStreet Mutual Insurance Company ("BrickStreet"), which covered any employee EIN provided to Taggart, including Mr. Gutierrez.[2] Taggart, as an additional insured under a policy issued by Zurich American Insurance Company ("Zurich") to Taggart Global USA, LLC, likewise had insurance coverage.

BrickStreet now seeks a declaration of whether Zurich is obligated to: (1) reimburse BrickStreet for half of the workers' compensation benefits already paid by BrickStreet to Mr. Gutierrez; and (2) contribute equally to workers' compensation benefits to be paid to Mr. Gutierrez in the future. In the instant motion, Zurich has moved to dismiss BrickStreet's Declaratory Judgment Complaint (the "Complaint") [Docket 1] on the grounds that the court lacks subject matter jurisdiction and, in the alternative, because BrickStreet failed to state a claim upon which relief can be granted.

## II. Legal Standard

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction

Under Federal Rule of Civil Procedure 12(b)(1), a party may file a motion to dismiss for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The plaintiff bears the burden of proving that subject matter jurisdiction exists. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). In considering a motion to dismiss filed under Rule 12(b)(1), the court "is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding into one for summary judgment." *Id.* The court should grant the motion "only if the material jurisdictional facts are not

---

[2] Under the PEO agreement, EIN was required to "obtain and maintain workers' compensation coverage on all Worksite Employees assigned to Client's workplace(s) and shall administer all related workers' compensation claims." (PEO Agreement between EIN & Taggart [Docket 8-4] ¶ 2.3).

in dispute and the moving party is entitled to prevail as a matter of law." *Id.* Once a party challenges a federal court's subject matter jurisdiction, "the district judge is not obliged to accept the plaintiff's allegations as true and may examine the evidence to the contrary and reach his or her own conclusions on the matter." 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1350 (3d ed. 2004).

### B. Motion to Dismiss for Failure to State a Claim

A motion to dismiss filed under Rule 12(b)(6) tests the legal sufficiency of a complaint or pleading. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). Federal Rule of Civil Procedure 8 requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). As the Supreme Court stated in *Ashcroft v. Iqbal*, the Rule 8 standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A court cannot accept as true legal conclusions in a complaint that merely recite the elements of a cause of action supported by conclusory statements. *Iqbal*, 556 U.S. at 677–78. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). To achieve facial plausibility, the plaintiff must plead facts that allow the court to draw the reasonable inference that the defendant is liable, and those facts must be more than merely consistent with the defendant's liability to raise the claim from merely possible to probable. *Id.* In determining whether a plausible claim exists, the court must undertake a context-specific inquiry, "[b]ut where the well-pleaded facts do not permit the court to infer more than the mere possibility of

3

misconduct, the complaint has alleged-but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

**III. Analysis**

  **A. Motion to Dismiss for Lack of Subject Matter Jurisdiction**

Zurich contends first that this court lacks subject matter jurisdiction because only the Workers' Compensation Office of Judges may decide issues related to Mr. Gutierrez's workers' compensation claim. In support of its argument, Zurich relies on West Virginia Code § 23-5-1(a), which provides, in relevant part:

> The Insurance Commissioner, private carriers and self-insured employers may determine all questions within their jurisdiction. In matters arising under subsection (c), section eight, article two-c of this chapter, and under articles three and four of this chapter, the Insurance Commissioner, private carriers and self-insured employers shall promptly review and investigate all claims. The parties to a claim are the claimant and, if applicable, the claimant's dependents, and the employer, and with respect to claims involving funds created in article two-c of this chapter for which he or she has been designated the administrator, the Insurance Commissioner. In claims in which the employer had coverage on the date of the injury or last exposure, the employer's carrier has sole authority to act on the employer's behalf in all aspects related to litigation of the claim. With regard to any issue which is ready for a decision, the Insurance Commissioner, private carrier or self-insured employer, whichever is applicable, shall promptly send the decision to all parties, including the basis of its decision.

According to Zurich, under West Virginia Code § 23-5-1, "the sole jurisdiction for the adjudication of worker[s'] compensation benefits is through the administrative process created by the legislature." (Mem. in Supp. of Def.'s Mot. to Dismiss [Docket 8], at 5). Zurich further argues that BrickStreet had the opportunity to correct the order, thereby bringing Zurich into the action, but failed to do so timely. *See* W. Va. Code § 23-5-1(e) (providing that the Insurance Commissioner may correct an order that "is discovered to be defective or clearly erroneous or the result of mistake, clerical error or fraud, or with respect to any order or decision denying

4

benefits, otherwise not supported by the evidence," so long as the correction is made within two years).

BrickStreet, on the other hand, argues that West Virginia's Workers' Compensation Act applies only to the administration of workers' compensation claims, and not to corollary issues such as insurance coverage disputes. BrickStreet points out that Chapter 23, Article 5 of the West Virginia Code, upon which Zurich relies, is titled "Review" and is exclusively "devoted to the process of reviewing, appealing, and potentially modifying . . . workers' compensation awards to injured employees." (Pl.'s Resp. in Opp'n to Def.'s Mot. to Dismiss [Docket 10], at 2). BrickStreet further contends that "[a]bsolutely nothing in [Article 5] says anything about applying to insurance coverage disputes." (*Id.*). I agree with BrickStreet's reasoning.

The West Virginia Workers' Compensation Act simply "addresses the related review concepts of objections, protests, and appeals." *Rollins v. Mason Cnty. Bd. of Educ.*, 489 S.E.2d 768, 773 (W. Va. 1997). Plainly, the law does not divest the federal courts of the power to hear actions properly brought under the jurisdictional reach of 28 U.S.C. § 1332. *Cf. N. Ins. Co. of New York v. David Nelson Const. Co.*, 41 F. Supp. 2d 1332, 1338 (M.D. Fla. 1999) ("[L]acking in the Florida Statutes is any language that suggests an intention on the part of the state agency or legislation to deal with all aspects related to workers' compensation in the state in an exclusive manner, (more specifically to avoid any federal involvement).").

As further evidence of the court's power to hear the case before me, a declaration of insurance coverage is not integrally related to the operation of West Virginia's workers' compensation system. That is, "[i]t does not protect or enhance the ability of workers to obtain compensation benefits, *i.e.*, fixed benefits without regard to fault for workplace injuries." *Arthur v. E.I. DuPont de Nemours & Co.*, 58 F.3d 121, 127 (4th Cir. 1995) (holding that a claim brought

under section 23-4-2 of the West Virginia's Workers' Compensation Act was not a "workmen's compensation law[ ]" in accordance with the removal statute and thus could be heard in federal court). Indeed, in the instant case, Mr. Gutierrez has *already obtained* an award of compensation benefits for his injuries, and the only issue remaining is whether Zurich must, in addition to BrickStreet, *cover* the award. Accordingly, I find the court's jurisdiction to be proper in this case.

### B. Motion to Dismiss for Failure to State a Claim

In the alternative, Zurich argues that BrickStreet's declaratory judgment action should be dismissed because, under West Virginia law and the PEO agreement,[3] BrickStreet's insurance policy is primary[4] to the policy issued by Zurich to Taggart. Zurich specifically argues that BrickStreet's policy is primary under West Virginia's PEO law, the PEO agreement itself, and the Workers' Compensation Rules of the West Virginia Insurance Commissioner. I am not persuaded by Zurich's arguments.

Under West Virginia Code § 33-46A-7(a), PEO agreements—such as the agreement between Taggart and EIN—shall specifically allocate "[t]he responsibility to obtain workers' compensation coverage for covered employees in compliance with all applicable law . . . ." If this responsibility is allocated to the PEO under the agreement—here, EIN—then the agreement "shall require that the PEO maintain and provide workers' compensation coverage for the covered employees from a carrier authorized to do business in this state." W. Va. Code § 33-46A-7(b)(1). Nonetheless, the client-employer—here, Taggart—likewise remains "liable . . . to

---

[3] In reviewing a Rule 12(b)(6) dismissal, I may "consider documents attached to the complaint, *see* Fed.R.Civ.P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

[4] Typically, "primary coverage attaches immediately upon the happening of an 'occurrence,' or as soon as a claim is made. The primary insurer is first responsible for indemnifying the insured in the event of a covered or potentially covered occurrence of claim." *Horace Mann Ins. Co. v. General Star Nat. Ins. Co.*, 514 F.3d 327, 329 (4th Cir. 2008) (quoting *Gauze v. Reed*, 633 S.E.2d 326, 332 (W.Va. 2006)). Excess insurance, on the other hand, does not provide initial coverage, but provides an additional layer of protection for losses that exceed the limits of primary coverage. *Id.*

provide workers' compensation coverage for its covered employees." *Id.* Critically, while West Virginia's PEO law requires both parties to the PEO agreement to maintain insurance coverage, it does not delineate one party's workers' compensation policy as primary to the other.

Correspondingly, the PEO agreement itself required: (1) EIN to "obtain and maintain workers' compensation coverage on all Worksite Employees assigned to the Client's workplace(s)"; and (2) Taggart to "maintain its status as a complying employer with its current insurance carrier." (PEO Agreement between EIN & Taggart [Docket 8-4] ¶ 2.2). But like West Virginia's PEO law, the PEO agreement does not delineate one workers' compensation policy as primary to the other, and such an absence severely undermines Zurich's argument. Indeed, other sections of the PEO agreement provide conspicuously which policy is primary. (*See, e.g.*, PEO Agreement between EIN & Taggart [Docket 8-4] § 3.3 (providing that, with regard to general liability insurance policies, Taggart "shall be considered primary . . . to any other liability insurance carried by EIN")). Put simply, the parties to the PEO agreement could have delineated one workers' compensation policy as primary to the other, but chose not to.

Finally, Zurich's reliance on the Workers' Compensation Rules of the West Virginia Insurance Commissioner is misplaced. In support of its argument that the BrickStreet policy is the primary policy, Zurich points to West Virginia Code Rule 85-31-6.3, which provides that where the claimant is a covered employee, and where there is in effect both a PEO workers' compensation policy and a direct purchase policy, the PEO policy shall be the primary policy. In submitting this argument, however, Zurich ignores the narrow scope of Rule 85-31-6, which applies only to "Master Policies." According to the Rules' definition section, a master policy is an "arrangement under which a single policy issued to a PEO covers *more than one* client-employer." W. Va. Code R. 85-31-3.7 (emphasis added). Importantly, the policy here was issued

7

to EIN for a single client-employer, Taggart, and therefore does not qualify as a master policy.[5] (*See* PEO Agreement between EIN & Taggart [Docket 8-4]). Accordingly, Rule 85-31-6 does not alter my analysis, and Zurich has failed to satisfy its burden under Rule 12(b)(6).

### IV. Conclusion

For the reasons set forth above, the defendant's Motion to Dismiss [Docket 7] is **DENIED**.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

                ENTER:     August 13, 2015

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

---

[5] Rather, the EIN policy is a multiple coordinated policy. *See* W. Va. Code R. 85-31-3.8 ("'Multiple Coordinated Policy Basis' or 'MCP Basis' means an arrangement under which a separate policy is issued to or on behalf of each client-employer but certain payment obligations and policy communications are coordinated through the PEO.").