IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

BRICKSTREET MUTUAL INSURANCE
COMPANY,

           Plaintiff,

v.                                      CIVIL ACTION NO.   2:15-cv-06172

ZURICH AMERICAN INSURANCE
COMPANY,

           Defendant.

MEMORANDUM OPINION AND ORDER
(*Cross-Motions for Summary Judgment*)

Pending before the court is the plaintiff BrickStreet Mutual Insurance Company's ("BrickStreet") Motion for Summary Judgment [ECF No. 24] and the defendant Zurich American Insurance Company's ("Zurich") Motion for Summary Judgment [ECF No. 26]. For the reasons herein, BrickStreet's Motion for Summary Judgment is **GRANTED** and Zurich's Motion for Summary Judgment is **DENIED**.

I.    Background

This is a declaratory judgment action relating to workers' compensation insurance coverage as between two insurance companies, BrickStreet and Zurich. The case arises out of injuries suffered by Jonathan Posadas Gutierrez while working at the Tunnel Ridge Mine outside of Wheeling, West Virginia. Gutierrez was employed to work on the Tunnel Ridge Mine River Load-Out through a professional

employer agreement ("PEO") between Taggart Site Services Group, LLC ("Taggart") and the Employer's Innovative Network, LLC ("EIN"). Compl. ¶ 3 [ECF No. 1]; *see also* BrickStreet Mem. Supp. Mot. Summ. J. 3 [ECF No. 25] ("BrickStreet Mem."); Zurich Mem. Supp. Mot. Summ. J. 1–2 [ECF No. 27] ("Zurich Mem.").[1] Taggart "engaged EIN to provide professional employer organization services at [Taggart's] workplace(s)." PEO Agreement ¶ 1 [ECF No. 24-3]. Under this agreement, EIN was responsible for "hiring, personnel relations, discipline and/or termination," and Taggart was responsible for "the day to day supervision and control of the employees to the extent . . . necessary to allow [Taggart] to conduct the normal business of [Taggart]." *Id.* ¶ 2.1.[2]

At the time of Mr. Gutierrez's accident on January 5, 2012, Taggart was an additional named insured on a policy issued by BrickStreet and a named insured on a policy issued by Zurich.[3] Brickstreet Policy 2 [ECF No. 24-2]; Zurich Policy 13.

The BrickStreet policy, which insures EIN and Taggart, states the following: "We will pay promptly when due the benefits required of you by the workers

---

[1] While Brickstreet states that Mr. Gutierrez was an employee of Taggart, Zurich is careful to qualify that characterization. For example, Zurich refers to EIN and Taggart as "co-employers" of Gutierrez, Zurich Mem. 1, or states that he was a "covered employee" of EIN and Taggart pursuant to § 33-46A-2(c) of the West Virginia Code. *Id.* at 2. As discussed below, this distinction is ultimately not dispositive of the issues in the case.

[2] According to BrickStreet, "[t]he whole point of a PEO is to take off of an employer certain of the HR burdens." Hr'g Tr. 9:16–17, July 26, 2016 [ECF No. 44].

[3] The Zurich policy insures Taggart's parent company, Taggart Global USA, LLC, Taggart, and a number of other subsidiaries. Zurich Policy 13 [ECF No. 24-1].

2

compensation law."[4] BrickStreet Policy 8. The BrickStreet policy also contains a standard "other insurance" clause:

> We will not pay more than our share of benefits and costs covered by this insurance and other insurance or self-insurance. Subject to any limits of liability that may apply, all shares will be equal until the loss is paid. If any insurance or self-insurance is exhausted, the shares of all remaining insurance will be equal until the loss is paid.

*Id.* at 9.

The Zurich policy, which insures Taggart, contains identical language as that contained in BrickStreet's policy: "We will pay promptly when due the benefits required of you by the workers compensation law." Zurich Policy 30. The Zurich policy also contains an "other insurance" clause identical to that found in the Brickstreet policy. *Id.* at 30–31.

Following Mr. Gutierrez's accident, he filed a claim for workers' compensation benefits with BrickStreet. Pursuant to the BrickStreet Policy insuring EIN Resources and Taggart under West Virginia workers' compensation law, BrickStreet has paid almost $2.4 million in workers' compensation medical benefits to Mr. Gutierrez and will continue to pay benefits in the future. Casto Aff. 2 [ECF No. 24-4]. BrickStreet does not dispute that its policy covers Gutierrez's injuries or that it is obligated to pay his workers' compensation benefits.

The core of BrickStreet's Complaint is that Zurich's policy *also* covers Mr.

---

[4] The policy's information page lists the insured as "EIN Resources LLC ELF Taggart Site Services Group." "Taggart Site Service Group" is also listed as an "additional named insured." BrickStreet Policy 1–2.

3

Gutierrez's claims, and pursuant to the "other insurance" clauses in both policies, Zurich must share equally in paying the claims. Specifically, BrickStreet seeks a declaration that Zurich is obligated to (1) reimburse BrickStreet for half of the workers' compensation benefits already paid by BrickStreet to Mr. Gutierrez[5] and (2) contribute equally to workers' compensation benefits to be paid to Mr. Gutierrez in the future.

The parties filed their Motions for Summary Judgment on June 6, 2016, to which each timely responded and filed replies. The court held a hearing on July 26, 2016. The matter is now ripe for adjudication.

## II. Legal Standard

To obtain summary judgment, the moving party must show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

---

[5] BrickStreet suggests that it will subtract from this amount "subrogation payments received by BrickStreet." I need not weigh in on the appropriateness of the precise calculations of the equally shared payments, and I have not been asked to do so.

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict" in his or her favor. *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013); *Stone v. Liberty Mut. Ins. Co.*, 105 F.3d 188, 191 (4th Cir. 1997).

### III. Discussion

To resolve the question of whether Zurich is obligated to share equally in the burden of paying workers' compensation benefits to Gutierrez, I look first to Zurich's policy to determine if it covers the claims at issue. I then consider how the Brickstreet and Zurich policies operate in tandem; specifically, I weigh whether a dual employment scenario affects workers' compensation obligations. Thereafter, I turn to the issue of contract priority in the current dispute. Finally, I briefly examine the West Virginia workers' compensation administrative scheme and its role in

5

apportioning insurance companies' contractual obligations to pay claims. Before proceeding, I note that neither party asserts, nor do I find, that there are any genuine issues of material fact; the disputes are purely legal.

### a. *Zurich's Policy*

As to the initial question of coverage, the parties do not dispute that Taggart was a named insured under Zurich's workers' compensation liability insurance at the time of Gutierrez's accident. The parties do, however, dispute whether Gutierrez's workers' compensation claim is covered under Zurich's policy.

Zurich presents inconsistent arguments as to whether its policy covers Mr. Gutierrez's workers' compensation claim. In its Memorandum in Support of its Motion for Summary Judgment, Zurich acknowledges that it provided workers' compensation coverage to "actual" Taggart employees, but it denies "that there is any scenario where [Zurich] provided workers' compensation coverage to Taggart for individuals working for it through a PEO, including Gutierrez." Zurich Mem. 4–5. Yet, at the hearing, Zurich identified precisely such a scenario and suggested that there *is* coverage, but it is only "triggered by [EIN] not having coverage in place that they are obligated to provide." Hr'g Tr. 46:6–7; *see also id.* at 41:8–11; Zurich Supp. Mem. 5 [ECF No. 39] (arguing that "coverage under the policy was never triggered" because, among other reasons, "EIN fulfilled its contractual obligation to obtain workers' compensation coverage for all Worksite Employees, such as Gutierrez").

Furthermore, Zurich fails to identify anything in the policy that would limit or

6

qualify coverage such that Zurich's policy would cover workers' compensation benefits for only certain categories of employees. Based on the plain language of the insurance policy, Zurich's coverage is coextensive with Taggart's workers' compensation obligations under West Virginia law. Zurich points to nothing in West Virginia's workers' compensation statute to suggest that Taggart—and thereby Zurich—is not obligated to cover Gutierrez's workers' compensation claims.

The crux of Zurich's argument appears to be that the PEO contract is capable of eliminating Taggart's workers' compensation obligations under West Virginia law.[6] I disagree. Taggart's obligations to Mr. Gutierrez are statutorily imposed based on its employer-employee relationship with Mr. Gutierrez; workers' compensation obligations do not arise from a PEO contract. *See, e.g.*, *Lester v. State Workmen's Comp. Comm'r*, 242 S.E.2d 443, 450–51 (W. Va. 1978) (holding that the "rights and duties under our workmen's compensation statute are no longer contractual but grow out of the employer-employee status to which the law attaches certain duties and responsibilities. The liability of employers arises from the law itself, rather than from any agreement of the parties."). The West Virginia Workers' Compensation Act expressly states that no employer "shall exempt himself from the burden . . . of this chapter by any contract, agreement, rule or regulation." W. Va. Code § 23-2-7. The

---

[6] For example, Zurich suggests that Taggart's responsibility to provide Mr. Gutierrez workers' compensation benefits is derived from the PEO agreement. Hr'g Tr. 56:4–12 ("And if there was something in the PEO agreement that made Taggart also responsible for providing him that benefit, then they would have spelled that out in the PEO."); *see also* Zurich Supp. Mem. Law 5 ("Taggart was not required, by law, to pay workers' compensation benefits to Gutierrez.").

PEO agreement's allocation of the responsibility to purchase workers' compensation coverage simply has no bearing on Taggart's obligations under the workers' compensation statute.[7]

Aside from Zurich's contentions that the PEO agreement eliminating Taggart's workers' compensation obligations and that Zurich's policy does not provide primary coverage,[8] Zurich does not dispute that its policy would otherwise cover Gutierrez's accident or that Taggart was Gutierrez's employer for workers' compensation purposes.[9]

Additionally, although Zurich consistently avoids characterizing Mr. Gutierrez as an employee of Taggart alone, it admits Mr. Gutierrez was a "'covered employee of EIN and Taggart Site Services pursuant to W.Va. Code section 33-46A-2(c)'" and

---

[7] In its Supplemental Memorandum of Law in Support of its Motion for Summary Judgment, Zurich cites to dicta in a case involving temporary employment agencies to support its claim that an employer can somehow alter or discharge its workers' compensation obligations through a contractual agreement. Zurich Supp. Mem. 2–5. Zurich argued that the common law borrowed servant doctrine is applicable to the instant case, citing to *Bowens v. Allied Warehousing Servs.*, 729 S.E.2d 845 (W. Va. 2012). Zurich Supp. Mem. 2–5. However, *Bowens* is not dispositive of the issues in the current case. Importantly, *Bowens* concerned temporary employment agencies, which are specifically excluded from the statutory definition of PEO. *See* W. Va. Code § 33-46A-2(g)(4) (defining PEO and stating that "[f]or purposes of this article, the following is not a PEO: . . . A person who provides temporary help services"); *Bowens*, 729 S.E.2d at 849–50. Additionally, suggesting that an employer—"special" or otherwise—may discharge his workers' compensation liability is directly at odds with the West Virginia Code provisions, discussed above, governing PEOs and workers compensation. Specifically, the West Virginia Code states, "No employer shall exempt himself from the burden of [the Workers' Compensation Chapter] by any contract, agreement, rule or regulation." W. Va. Code, § 23-2-7. Moreover, "the provisions of [§ 23-2-7] may not be abrogated by a PEO agreement and the client-employer shall at all times remain ultimately liable under [Chapter 23] of this code to provide workers' compensation coverage for its covered employees." W. Va. Code § 33-46A-7(b)(1).

[8] At times, Zurich appears to conflate the question of priority with the threshold question of coverage. In their briefings, Zurich focuses primarily on priority, suggesting that its policy was not primary and therefore there was no coverage.

[9] Zurich conceded that, looking solely at Zurich's insurance contract without reference to the PEO agreement, Zurich's policy covers Gutierrez's accident. *See* Hr'g Tr. 29:18–22.

8

pursuant to "the PEO agreement which existed between Taggart Site Services and EIN." Zurich Mem. 2. Section 33-46A-2(c) of the West Virginia Code defines "covered employee" as a "person employed by a client employer for whom certain employer responsibilities are shared or allocated pursuant to a PEO agreement." Here, Taggart is the client-employer,[10] meaning that Guttierrez—as a "covered employee"—is employed by Taggart.[11] The parties do not dispute whether Gutierrez was employed by Taggart at the time of his accident; indeed, the parties essentially suggest that Gutierrez had two employers at the time of his accident—EIN and Taggart.[12] *See, e.g.,* Zurich Mem. 1 (referring to EIN and Taggart as "co-employers" of Gutierrez); Hr'g Tr. 9:11–14, BrickStreet ("[A]n employee such as Mr. Gutierrez is deemed to be an employee of both the client employer—in this case [Taggart]—and EIN, which is the . . . PEO.").

The West Virginia workers' compensation statute does not address how it should operate in a dual employment scenario. Section 33-46A-7 of the West Virginia Code contemplates workers' compensation, but it does not expressly eliminate or alter workers' compensation obligations. To the contrary, § 33-46A-7 expressly states that,

---

[10] According to § 33-46A-2 the West Virginia Code, "'Client-employer' means an employer who enters into a professional employer agreement with a PEO." Based upon the PEO Agreement between EIN and Taggart, Taggart plainly qualifies as a client-employer.

[11] Also of import is Taggart's assertion in a related proceeding that it was entitled to statutory immunity from Gutierrez's claims under § 23-2-6 of West Virginia's workers' compensation statute, as "an employer in good standing." Zurich Mot. Ex. C, at 1–2 [ECF No. 26-3].

[12] Taggart also admits the factual allegation in the state court complaint that "[a]t all times material herein, including January 5, 2012, Plaintiff [Mr. Gutierrez] was working on behalf of Defendant Taggart Site Services as an ironworker at the River Load-Out Facility." Ex. A, Zurich Mot., Compl. ¶ 23, Circuit Court of Ohio County, West Virginia, No. 12-c-407 [ECF No. 26-1]; Taggart's Answer ¶ 23.

to the extent responsibility to obtain workers' compensation coverage is allocated to the PEO, "the provisions of [§ 23-2-7] may not be abrogated by a PEO agreement and the client-employer shall at all times remain ultimately liable under [Chapter 23] of this code to provide workers' compensation coverage for its covered employees." W. Va. Code § 33-46A-7(b)(1). The referenced section, § 23-2-7, states: "No employer or employee shall exempt himself from the burden or waive the benefits of this chapter by any contract, agreement, rule or regulation, and any such contract, agreement, rule or regulation shall be pro tanto void." W. Va. Code, § 23-2-7. I can find no statutory provision that would somehow eliminate or relieve Taggart of its obligation to provide workers' compensation benefits as an employer of Gutierrez.

Accordingly, I **FIND** that Taggart was Mr. Gutierrez's employer under the West Virginia's workers' compensation statute, and Zurich is thus bound by the terms of its policy to cover Taggart's obligation to provide Mr. Gutierrez with workers' compensation benefits.

### b. *Priority of Coverage*

Next, I must determine how these two policies relate to one another. BrickStreet argues that the policies' "other insurance" clauses control and the coverage of the relevant claims must be shared equally. Zurich argues that BrickStreet's policy is primary based on West Virginia statutes and regulations governing PEO agreements and the specific PEO agreement in this case.

I begin with the proposition that "other insurance" clauses are generally valid

and enforceable under West Virginia law. *See Horace Mann Ins. Co. v. Gen. Star Nat. Ins. Co.*, 514 F.3d 327, 330–31 (4th Cir. 2008). "Generally speaking, in cases where the other-insurance clauses can be reconciled, the clauses will be enforced in accordance with their terms." *Id.* at 331. Additionally, it is a "well-settled principle" of West Virginia contract law that the court must "apply, and not interpret, the plain and ordinary meaning of an insurance contract in the absence of ambiguity or some other compelling reason." *Payne v. Weston*, 466 S.E.2d 161, 166 (W. Va. 1995); *see also Wellington Power Corp. v. CAN Sur. Corp.*, 614 S.E.2d 680, 684 (W. Va. 2005) ("[A] valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation.") (citation omitted). The court may only consider extrinsic evidence when the contract in question is ambiguous. *Payne*, 466 S.E.2d at 166.

Here, there is nothing ambiguous about the "other insurance" clauses, which provide that where benefits and costs are covered by "other insurance or self-insurance . . . all shares will be equal until the loss is paid." BrickStreet Policy 8; Zurich Policy 30. Accordingly, I have no occasion to look to the PEO agreement between Taggart and EIN or the PEO statute for evidence of the parties' intent.[13] Additionally, the identical clauses are perfectly reconcilable in this instance, so I

---

[13] Zurich spends considerable space discussing the PEO agreement and how it should be interpreted. *See* Zurich Mem. 5–8; Zurich Resp. 1–5 [ECF No. 35]. It argues the PEO statute is evidence of the parties' intent in drafting the PEO agreement. This emphasis is misplaced; at issue are the terms of the *insurance contracts*, not the PEO agreement. Zurich does not discuss the "other insurance" clauses in its Motion for Summary Judgment and nowhere suggests that the clauses are ambiguous.

should apply them according to their terms.

The only reason I might look to West Virginia's statutory and regulatory provisions regarding PEOs is to determine whether the "other insurance" clauses are expressly forbidden or otherwise against public policy. *See Wellington*, 614 S.E.2d at 686 (noting that freedom to contract is not unfettered and contracts cannot take a form "expressly forbidden by law" and may be voided as violating public policy). The "judicial power to declare a contract void as contravening sound public policy is a 'very delicate and undefined power,' and should be exercised only in cases free from doubt." *Id.* (quoting *Barnes v. Koontz*, 163 S.E. 719 (W. Va. 1932)) (internal citations omitted). West Virginia's "public policy favors freedom of contract which is the precept that a contract shall be enforced except when it violates a principle of even greater importance to the general public." *Id.* at 685.[14]

I find that the "other insurance" clauses do not conflict with applicable law governing PEOs or workers' compensation. Potentially relevant are § 33-46A-7 of the West Virginia Code and § 85-31-6 of the West Virginia Code of State Rules. As discussed above, § 33-46A-7(a) states "[t]he responsibility to obtain workers' compensation coverage for covered employees in compliance with all applicable law shall be specifically allocated in the professional employer agreement to either the

---

[14] In its Motion for Summary Judgment, Zurich argues only that these regulations are relevant to the *PEO agreement*—not the insurance contract—and, even there, Zurich suggests only that these sources are relevant evidence of intent, not of contravening public policy. When probed at the hearing on the Motion for Summary Judgment to focus on the insurance contracts, counsel for Zurich stated that the court must look to applicable law surrounding the existence of the contract and suggested that § 33-46A-7 dictates that one policy is primary to the other. Hr'g Tr. 42:17–43:12.

client-employer or the PEO." Nothing in this provision precludes both parties from obtaining coverage above and beyond the specific allocation of responsibility in a PEO agreement. In fact, the section goes on to state that a PEO agreement cannot abrogate the workers' compensation statutory rule that no employer can contractually exempt himself from his workers' compensation burdens, and the "client-employer shall at all times remain ultimately liable . . . to provide workers' compensation coverage for its covered employees." *See* W. Va. Code § 33-46A-7(b)(1) (referencing W. Va. Code § 23-3-7). Finally, the statute fails to delineate one party's workers' compensation policy as primary to the other in the event that both a PEO and client-employer obtain coverage. Accordingly, § 33-46A-7 has no effect on the priority of the insurance policies.

Section 85-31-6 of the West Virginia Code of State Rules is potentially relevant to the question of priority and may have been controlling in the absence of the valid and enforceable "other insurance" clauses in this case. Subsection 85-31-6(3) states in pertinent part, "If on the relevant date of injury there is both a PEO workers' compensation policy in effect and a direct purchase policy in effect, the following shall apply: If claimant is a covered employee, then the PEO policy shall be the primary policy." W. Va. Code. R. § 85-31-6(3)(a). Yet the next subsection qualifies that "[u]nder no circumstances shall this section be interpreted to have any legal effect on the terms, conditions or legal rights as between a private carrier, PEO and client employer established pursuant to a valid PEO agreement or insurance contract, or

13

the rights of a private carrier, PEO or client employer to enforce the same through various legal remedies." W. Va. Code. R. § 85-31-6(4). BrickStreet disputes the applicability of § 85-31-6(3) to the instant case because the title of the section is "Scope of Coverage for Master Policies," and, as both parties agree, the BrickStreet policy is on a "multiple coordinated policy" basis. I find it unnecessary to determine the precise scope of this provision because, even if subsection (3) applies to the policy in this case, subsection (4) qualifies that it has no effect on the terms of BrickStreet and Zurich's valid insurance policies.

Accordingly, I find no conflict between § 85-31-6 and the "other insurance" clauses stating the parties' intent to share equally in their coverage obligations.

I **FIND** that the unambiguous and reconcilable "other insurance" clauses contained in BrickStreet and Zurich's respective workers' compensation insurance policies are controlling on the issue of priority.

### c. *Administrative Framework*

Finally, Zurich argues that because there is allegedly no mechanism within the West Virginia workers' compensation system to apportion insurance companies' obligations to pay claims, BrickStreet and Zurich cannot share the burden of paying Mr. Gutierrez's claims. *See, e.g.*, Resp. to BrickStreet Mot. 6 (arguing that the legislature created an "all or nothing" system and an employer "cannot simply argue that it has only partial responsibility for paying a claim").[15]

---

[15] Zurich also claims that Brickstreet is attempting to circumvent the workers' compensation administrative framework because the two-year statute of limitations has passed. Because the instant

I have already rejected the similar argument that BrickStreet was obligated to proceed through the administrative framework in seeking contribution from Zurich in my Order denying Zurich's Motion to Dismiss. Order, Aug. 13, 2015 [ECF No. 13] ("a declaration of insurance coverage is not integrally related to the operation of West Virginia' workers' compensation system"). I do not change my position here.

## IV. Conclusion

In summary, I **FIND** that Zurich's insurance policy provided workers' compensation coverage for the injuries Mr. Gutierrez sustained on January 5, 2012, while working for Taggart and EIN pursuant to a PEO agreement. Moreover, I **FIND** that the unambiguous and reconcilable "other insurance" clauses in the Zurich and BrickStreet policies must be enforced according to their terms, such that Zurich and BrickStreet must share equally in the coverage burden.

BrickStreet's Motion for Summary Judgment [ECF No. 24] is **GRANTED** and Zurich's Motion for Summary Judgment [ECF No. 26] is correspondingly **DENIED**. Accordingly, the court **GRANTS** the relief sought in BrickStreet's Complaint and **DECLARES** that the defendant Zurich is obligated to share equally in the burden of paying workers' compensation benefits to Mr. Gutierrez for injuries he sustained in a workplace injury on January 5, 2012; Zurich must reimburse BrickStreet for half of the amount of workers' compensation benefits BrickStreet has already paid to Mr. Gutierrez and share equally going forward.

---

dispute need not—indeed, cannot—be handled through the administrative framework, the statute of limitations argument is without merit.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party. The court further **DIRECTS** the Clerk to post a copy of this published opinion on the court's website, www.wvsd.uscourts.gov.

        ENTER:    September 15, 2016

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE